# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

EQUAL EMPLOYMENT OPPORTUNITY )
COMMISSION, )
                                              )
             Plaintiff, )
                                                )    Civil Action No.  04-C-0875
     v. )
                                                )    Judge Griesbach
SCHNEIDER NATIONAL, INC., )
                                                )
            Defendant. )

## MEMORANDUM IN SUPPORT OF
## SCHNEIDER'S MOTION FOR SUMMARY JUDGMENT ON LIABILITY

Defendant Schneider National, Inc. presents this memorandum in support of its motion for summary judgment on liability in this "regarded as" Americans with Disabilities Act (ADA) case arising under 42 U.S.C § 12102(2)(C).[1]  For the reasons that follow, Schneider is entitled to summary judgment on plaintiff's claim that it "regarded" Jerome Hoefner as disabled when, in accordance with its Occupational Health and Wellness policy, it terminated Hoefner from his commercial driving position with Schneider after he feinted and then was diagnosed by his doctors with neurocardiogenic syncope.

---

[1] Schneider National Carriers, Inc. is the proper defendant in this case.  Schneider National, Inc., the parent of Schneider National Carriers, Inc., did not employ Mr. Hoefner.  Defendant Statement of Facts ("Def. SOF"), filed contemporaneously herewith, ¶ 7.  For this reason alone, Schneider National, Inc. is entitled to summary judgment.  42 U.S.C. § 12112(a), 12111(2),(5) (ADA employment prohibitions apply only to a "covered entity," which in this case is limited to an "employer. ").

# INTRODUCTION

> [A]n employer is free to decide that physical characteristics or medical conditions that do not rise to the level of an impairment – such as one's height, build, or singing voice – are preferable to others, just as it is free to decide that some limiting, but not substantially limiting, impairments make individuals less than ideally suited for a job.

*Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 478 (1999).

In *Sutton*, plaintiffs alleged disability discrimination after they were disqualified from a specific job because they were unable to meet certain eyesight qualification standards. *Sutton*, 527 U.S. at 476. The Supreme Court held that defendant regarded plaintiffs' poor vision as only precluding them from holding positions as a "global airline pilot" and because that is a single job, the allegation did not support a claim that the defendant regarded them as having a substantially limiting impairment. *Id.* at 493.

This Court recognized and applied *Sutton* in its November 4, 2005 Order in this case, where it stated:

> In English, that means the ADA prohibits discrimination against those who are really disabled *and* those who one thinks are really disabled; it does not prohibit discrimination against those who are only barely impaired or not impaired at all. . . . Thus, it is okay to discriminate against people with medical conditions (such as poor, albeit correctable, eyesight) so long as the medical condition is a minor one, i.e., one that no one believes is substantially limiting. Applying that rationale to this case, Schneider would say: We have decided, for business reasons, that our truck drivers must never experience syncope, which is a medical impairment which no one thinks is substantially limiting; we are discriminating, sure, but not on the basis of a "disability."

November 4, 2005 Order at 3 (emphasis in original) (reference to *Sutton* omitted).

The undisputed facts show that the Federal Motor Carrier regulations specifically allow carriers like Schneider to set their own driver safety requirements at levels more stringent than the minimum standards set by the United States Department of Transportation

2

(DOT). Consistent with these federal regulations, Schneider made a business judgment not to accept the risk of employing as a Schneider over-the-road ("OTR") commercial truck driver those diagnosed with neurocardiogenic syncope – a condition associated with sudden and completely unpredictable loss of consciousness.

The undisputed facts also show that Jerome Hoefner was diagnosed with neurocardiogenic syncope, and Hoefner was thus disqualified from Schneider OTR commercial driving pursuant to Schneider's policy. What the facts *utterly fail to show* is that Schneider passed any judgment on whether Hoefner could be an OTR commercial truck driver for another trucking company that evaluates the risk associated with a neurocardiogenic syncope diagnosis differently. Indeed, the facts show without dispute that Hoefner easily landed a non-Schneider OTR commercial truck driving job after his termination as a Schneider driver, and continues in that position to this day. The facts thus show that Schneider did not view Hoefner's diagnosis as substantially limiting any major life activity, and did not regard him as disabled. The undisputed facts entitle Schneider to judgment as a matter of law.

## UNDISPUTED FACTS

Schneider National Carriers, Inc ("Schneider" or "Defendant") is a subsidiary of Schneider National, Inc., ("Schneider National"), a trucking company which currently employs about 13,000 truck drivers. Def. SOF ¶ 7. Schneider's number one corporate value is, "SAFETY FIRST AND ALWAYS. WE HAVE AN OBLIGATION TO OUR ASSOCIATES AND THE PUBLIC TO OPERATE SAFELY. NOTHING WE DO IS WORTH HURTING OURSELVES OR OTHERS." Def. SOF ¶ 8 (emphasis added).

3

Schneider's culture is permeated with this message; and, as acknowledged by Hoefner, it is regularly communicated to Schneider employees. Def. SOF ¶ 9.

Beginning in 1989, Jerome Hoefner was employed as an OTR commercial truck driver for Schneider National Carriers, Inc. Def. SOF ¶ 38. Commercial truck driving is a dangerous occupation, and required Hoefner to drive a Schneider tractor-trailer more than 60 feet long, weighing more than 80,000 pounds, over 500 miles per day, for stretches of 10 hours per day of driving time with appropriate DOT mandated breaks, at speeds up to 65 miles per hour. Def. SOF ¶ 40. For years, Hoefner was a dependable driver. Def. SOF ¶ 42.

Regrettably, on Sunday, October 6, 2002, Hoefner experienced two sudden and unpredictable fainting spells – one while standing in church when he lost the use of his hands and dropped his hymnal, and one while seated at a bar, when he passed out for one to two minutes. Def. SOF ¶ 43-44. That night, Hoefner went to the Aurora Two Rivers hospital, where he spent the night in the emergency room. Def. SOF ¶ 45-46. The next morning, on October 7, 2002, Hoefner was not allowed by his physicians to drive his personal vehicle and was transferred via ambulance from Aurora Two Rivers hospital to Aurora BayCare hospital. Def. SOF ¶ 46.

Hoefner underwent a myriad of tests, including tilt table testing, which entails placing the patient on a table and then tilting the table to a certain angle while monitoring heart rate and blood pressure, in order to determine whether a syncopal episode (i.e. fainting spell) was caused by neurological factors. Def. SOF ¶ 23-24, 47. If the patient is not able to withstand the tilting without experiencing certain changes in blood pressure and heart rate, and symptoms like wooziness and lightheadedness, the test is "positive" or "abnormal" and may indicate the syncope was caused by neurocardiogenic dysfunction (i.e., neurocardiogenic

4

syncope).  Def. SOF ¶ 23-24.  Tilt table testing is the only method available to diagnose neurocardiogenic syncope, a term encompassing a broad range of fainting conditions which have as their common denominator a "transient self-limited disturbance of heart-rate blood pressure control."  Def. SOF ¶ 3.[2]

On October 10, 2002, Hoefner underwent two tilt table tests, the first without medication, and the second with medication.  Def. SOF ¶ 47.  During each test, in less than ten minutes, Hoefner began to show the "abnormal" symptoms.  Def. SOF ¶ 47.  Based on Hoefner's reaction to the tilt table testing, doctors diagnosed him with neurocardiogenic syncope.  Def. SOF ¶ 48.  Hoefner was released from the hospital but told not to drive until he was able to pass a tilt table test.  Def. SOF ¶ 48.

On October 23, 2002, Hoefner underwent two more tilt table tests, on two different medications.  Def. SOF ¶ 51.  The results of these tests were even worse than the last round – during both he began to experience abnormal symptoms like wooziness and lightheadedness shortly after the test began.  Def. SOF ¶ 51.  In fact, during the second test on October 23, 2004 (Hoefner's fourth tilt table test), Hoefner experienced symptoms including  feeling "woozy, jittery and nervous," "paroxysmal coughing," "hyperventilating"

---

[2] Schneider reasserts its objection to any expert testimony in this case, *see* Motion to Exclude Plaintiff's Experts, dated July 20, 2005, and reserves its right, if necessary, to challenge plaintiff's purported experts on any ground permitted by the Federal Rules of Evidence. Notably, each of the plaintiff's proffered experts testified that he/she has nothing to offer to the Court on the question whether Schneider "regarded" Hoefner as disabled.  Def. SOF ¶ 77-79.  This Court already has noted:  "As such, the *actual* nature of Hoefner's disability is wholly irrelevant to the issue at hand because all that matters is Schneider's *perception* of Hoefner's abilities."  November 4, 2005 Order at 2 (emphasis in original).

5

and "numbness in his fingers." Def. SOF ¶ 51. Following this round of testing, doctors put Hoefner on a drug called Florinef. Def. SOF ¶ 52.

Meanwhile, Hoefner was providing updates to Schneider's Occupational Health and Wellness Department, which sets health and safety standards for Schneider's OTR truck drivers and ensures that all of Schneider's OTR truck drivers meet both Schneider and Department of Transportation ("DOT") standards. Def. SOF ¶¶ 10, 50, 53. While Schneider abides by DOT safety regulations as minimum safety qualifications for Schneider drivers, in some instances it requires Schneider drivers to meet higher standards to qualify for positions as Schneider OTR drivers. Def. SOF ¶ 11. On October 14 and 29, 2002, Hoefner called Schneider Occupational Health and told nurses that he had fainted twice, had a "neurocardiac condition," and that "some electrical problem in his brain [was] telling his heart to slow." Def. SOF ¶ 50 ,53.

On October 31, 2002, Hoefner took his fifth tilt table test, and with the assistance of Florinef, passed. Def. SOF ¶ 54.

On November 5, 2002, Schneider Occupational Health received the results of Hoefner's testing. Def. SOF ¶ 55. Nurse Wendy Sullivan reviewed the documentation, and noted Hoefner's diagnosis of neurocardiogenic syncope. Def. SOF ¶ 55. Sullivan recognized neurocardiogenic syncope as a disqualifying condition under Schneider's (as opposed to DOT) qualification standards. Def. SOF ¶¶ 55-56.

At the time of Hoefner's' neurocardiogenic syncope diagnosis, Schneider's syncope policy read as follows:

## SYNCOPE

If reason for syncopal episode cause is diagnosed and treated, driver may be eligible to return to work after cleared by physician, receipt of medical records to support this and DOT certification.

If reason for syncopal episode is unknown driver must have the following:

1.      Cardiac Evaluation, testing ordered by cardiologist, sni rtw slip from a cardiac standpoint.

2.      Neural Evaluation, testing ordered by neurologist, sni rtw slip; from neurological standpoint

3.      Negative tilt table report

The following are automatic disqualifying diagnosis for Schneider National:

1.      Vaso-vagal syncope

2.      Neurocardiogenic syncope

3.      Pertussive syncope

This needs to be informed to driver & STL via telephone conversation and written follow up sent to the driver (Form letter: H:shar/hr/occhealth/team/syncope driver- filled in appropriately) A carbon copy of letter needs to be placed in the paper file.

If the cause of the syncope after evaluation by a cardiologist and neurologist remains unknown and testing performed is all negative the case will be reviewed by Occupational Health.  If Occupational Health determines that the circumstances of the case could pose a threat to the driver & motoring public, Occupational Health will consult with Loss Prevention Dept to make determination on [driver's] ability to return to work as an over-the-road truck driver with SNI.

                                                            Created 1/00- rev'd 7/26/02

Def. SOF ¶ 34.

Schneider's neurocardiogenic syncope policy was first implemented in January 2000,

after a fatal accident involving a Schneider commercial truck driver, Michael Kupsky.  Def.

SOF ¶¶ 27-31.  Kupsky had one instance of syncope prior to applying for employment with

7

Schneider.  Def. SOF ¶ 22.  Schneider was concerned about Kupsky's past syncopal event, and proceeded with caution.  Def. SOF ¶ 18-19.  Upon the recommendation of a trusted physician, it required Kupsky to undergo tilt table testing, which Mr. Kupsky initially failed, in a manner very similar to Mr. Hoefner – experiencing lightheadedness near the beginning of the test.  Def. SOF ¶¶ 20-25.  Also similar to Hoefner, Kupsky's doctors evaluated his reaction to the test as consistent with neurocardiogenic dysfunction.  Def. SOF ¶ 25.  Also like Hoefner, with drug treatment, Kupsky ultimately passed a tilt table test.  Def. SOF ¶ 26.  Based on these test results and a physicians' DOT certification, in late November 1999, Schneider Occupational Health qualified Kupsky as a Schneider OTR driver.  Def. SOF ¶ 26

Less than two months later, in January 2000, Mr. Kuspky was killed while driving for Schneider, when he crashed his truck through a bridge railing and into a river below.  Def. SOF ¶ 27.  Kupsky's autopsy reflects that his death was caused by a "severe crushing head injury with massive skull fracturing."  Def. SOF ¶ 28.  The autopsy also indicated "no anatomic evidence to prove an acute coronary event" i.e., no medical evidence that Kupsky had a heart attack.  Def. SOF ¶ 28.  Unfortunately, it was impossible to determine whether the crash was caused by Kupsky's experiencing another syncopal event while driving, as fainting would not show up on the autopsy.  Def. SOF ¶ 29.

While Schneider could never be certain that Kupsky's crash was caused by neurocardiogenic syncope, it decided that it simply would take no more chances with a neurocardiogenic syncope diagnosis, and implemented the above policy disqualifying individuals with that diagnosis from its OTR truck driving positions.  Def. SOF ¶ 30-31.  DOT regulations specifically allow Schneider to impose safety standards above DOT minimums:

8

Additional requirements.  Nothing in Subchapter  B of this chapter shall be construed to prohibit an employer from requiring and enforcing more stringent requirements relating to the safety of operations and employee safety and health.

49 C.F.R. § 390.3(d).

In light of its syncope policy, and based on the Hoefner's confirmed neurocardiogenic syncope diagnosis, Sullivan and Hyer advised Hoefner's supervisor Michael Hinz that he would have to terminate Hoefner from his Schneider OTR commercial truck driving job. Def. SOF ¶¶ 55-59.

Hoefner first learned of his disqualification from Veronica Koske of Schneider Occupational Health, who telephoned him on November 6, 2002 and, according to Hoefner, told him he would "no longer be driving an orange truck" – Schneider's trucks are a distinctive orange.  Def. SOF ¶ 60.  Michael Hinz also later informed Hoefner of his disqualification, and by letter dated January 28, 2003, invited him to apply for Schneider non-driving positions, as Hinz was unaware of any  Schneider non-commercial driving positions.  Def. SOF ¶¶ 65.  Hoefner decided not to apply for non-driving positions with Schneider, as he wanted to remain employed as an OTR commercial truck driver.  Def. SOF ¶ 66-68.  In November 2003, Hoefner found employment as an OTR commercial truck driver with Dean Brennan Company, which is headquartered in Manitowoc, Wisconsin.  Def. SOF ¶ 82.

Hoefner's managers at Schneider are well aware that Hoefner easily found another job and now drives for another company.  Def. SOF ¶ 84.  It is well known in the industry that there is a significant nationwide shortage of OTR commercial truck drivers; and

9

Schneider managers realize that Schneider's safety standards are more rigorous than the minimums set by the DOT, and those of other trucking companies. Def. SOF ¶ 85-87.

## ARGUMENT

### I. SCHNEIDER IS ENTITLED TO SUMMARY JUDGMENT IF THE UNDISPUTED FACTS ENTITLE IT TO JUDGMENT AS A MATTER OF LAW.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Federal Rule of Civil Procedure 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *accord, e.g., Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir. 1995). Thus, the Court certainly should grant summary judgment to Schneider if the undisputed facts entitle it to judgment as a matter of law.

### II. THE UNDISPUTED FACTS SHOW THAT SCHNEIDER DID NOT "REGARD" HOEFNER AS "DISABLED" WITHIN THE MEANING OF THE ADA.

In order to establish a *prima facie* case that Hoefner is disabled, the plaintiff must show either: (1) that Hoefner has a physical or mental impairment that substantially limits him in one or more of the major life activities; (2) that Hoefner has a record of such impairment; or (3) that Schneider regarded Hoefner as having such an impairment. *See Nese*, 495 F.3d at 641 *citing* 42 U.S.C. § 12102(2). "If [Hoefner's] condition does not meet one of

10

these categories even if he was terminated because of some medical condition, he is not disabled within the meaning of the Act. The ADA is not a general protection for medically afflicted persons." *Nese v. Julian Nordic Construction*, 405 F.3d 638, 641 (7th Cir. 2005) *citing Christian v. St. Anthony Med. Ctr., Inc.*, 117 F.3d 1051 (7th Cir. 1997); *see also Moore v. J.B. Hunt Transport, Inc.*, 221 F.3d 944, 955 (7th Cir. 2000) (affirming summary judgment where the employer terminated plaintiff's employment because, due to his rheumatoid arthritis, he was unable to tolerate cold damp conditions).

Hoefner admits that he has no actual disability, that is, no physical or mental impairment that substantially limits one or more of his major life activities:

> Q.    So it's your testimony here that you do not have a disability, right?
>
> A.    That's my testimony.

Def. SOF ¶ 91; *accord* November 4, 2005 Order at 2. Hoefner likewise does not claim to have a "record of" an impairment that substantially limits a major life activity. Rather, he asserts (and his experts agree) that his neurocardiogenic syncope diagnosis is not limiting at all. Def. SOF ¶ 91. Hoefner simply claims that Schneider "regarded" him as having an impairment that substantially limits a major life activity. November 4, 2005 Order at 2.

There are two ways in which an individuals may be "regarded as" disabled: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. *See Sutton*, 527 U.S. 489 at 489 (emphasis added). As this Court stated: "[T]he ADA prohibits discrimination against those who are really disabled and those who one thinks are really

11

disabled; it does not prohibit discrimination against those who are barely impaired or not impaired at all." November 4, 2005 Order at 3.

Plaintiff alleges that Schneider believes that Hoefner's neurocardiogenic syncope diagnosis, whether or not an impairment, substantially limits a major life activity when, in fact, it is not so limiting. The ADA does not define "major life activity." The plaintiff EEOC has issued a regulation that defines it as follows:

> "Major life activities" are those basic activities that the average person in the general population can perform with little or no difficulty. Major life activities include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. This list is not exhaustive. For example, other major life activities include, but are not limited to, sitting, standing, lifting, reaching . . .

29 C.F.R. § 1630.2(i).

Plaintiff has no evidence that Schneider believed that Hoefner was impaired with regard to seeing, hearing, etc. Rather, the only possible "major life activity" that could apply in this case is "working." [3]

## A. The Court Should Reject The EEOC Regulation That "Working" Is A "Major Life Activity."

As the United States Supreme Court has repeatedly noted, "no agency has been given authority to issue regulations interpreting the term "disability" in the ADA. Nonetheless, the EEOC has done so." *Toyota Motor Mfg., Ky., Inc., v. Williams*, 534 U.S. 184, 194 (2002),

---

[3] "Driving" clearly is not a major life activity. *See Reberg v. Road Equipment*, No. 2:04-cv-368 PS, 2005 U.S. Dist. LEXIS 31699, *12 (N.D. Ind. Dec. 7, 2005) (agreeing with courts that hold driving is not a major life activity) *citing Felix v. N.Y. Trans. Auth.*, 324 F.3d 102, 106 (2d Cir. 2003); *Chenoweth v. Hillsborough Cy.*, 250 F.3d 1328, 1329 (11th Cir. 2001); *Yindee v. Commerce Clearing House, Inc.*, 2005 U.S. Dist. LEXIS 12769 (N.D. Ill. June 16, 2005); *See Green v. Pace Suburban Bus*, No. 02 C 3031, 2004 U.S. Dist. LEXIS 12956, *34 (N.D. Ill. July 12, 2004).

As the Supreme Court stated: "[E]ven the EEOC has expressed reluctance to define major life activities to include working and has suggested that working be viewed as a residual life activity, considered, as a last resort, 'only if an individual is not substantially limited with respect to any other major life activity.'" *Sutton*, 527 U.S. 471 at 492 *citing* 29 C.F.R. pt. 1630, App. § 1630.2(j)(1998).

While many courts, including the Seventh Circuit, have assumed without careful analysis that working is a major life activity, the Supreme Court has cast that assumption into doubt:

> We note, however, that there may be some conceptual difficulty in defining "major life activities" to include work, for it seems "to argue in a circle to say that if one is excluded, for instance, by reason of [an impairment, from working with others] . . . then that exclusion constitutes an impairment, when the question you're asking is, whether the exclusion itself is by reason of handicap.

*Sutton*, 527 U.S. 471 at 493; *see also Toyota*, 534 U.S. at 200 (noting "conceptual difficulties inherent in the argument that working could be a major life activity"). In *Kupstas v. City of Greenwood*, 398 F.3d 609, 612 (7th Cir. 2005), the Seventh Circuit even stated: "The Supreme Court has voiced some reservations, and expressly reserved judgment, about whether working can be a major life activity under the ADA." (internal citations omitted).

Schneider asserts that working is not a major life activity and EEOC regulations to that effect are due no deference by this Court. As *Sutton* noted, it is entirely circular to analyze whether an employer discriminated against an employee who could not do a job based on that employee's inability to work. *Sutton*, 527 U.S. 471 at 493. Moreover, "working" is conceptually different from other major life activities accepted by courts. Just as in *Reberg,* see n. 3 *supra*, the court rejected driving as a major life activity: "It is odd to

13

suggest that driving – an activity regulated by the States through the issuance of licenses – is a major life activity on par with walking, hearing, breathing, and the like;" it is also odd to suggest that working, a term dealing with one's ability to interact in our economic system and not with any physiological function, is on par with walking, hearing, breathing, and the like. *Reberg*, 2005 U.S. Dist. LEXIS at *12. Further, since the "work" being done by Hoefner was driving, and driving is not a major life activity, it would be incongruous to find that activity to be covered simply by relabeling it as "work." Because "working" is not a "major life activity," the EEOC has no possible basis to argue that Schneider regarded Hoefner as disabled within the meaning of the ADA, and for this reason alone Schneider is entitled to judgment as a matter of law.

**B.      In Any Event, The Undisputed Facts Show That Schneider Did Not Regard Hoefner As Substantially Limited In His Ability To Work.**

The Court should grant summary judgment to Schneider even if it concludes (or assumes) that working is a major life activity because Schneider did not regard Hoefner as substantially limited in his ability to work, but rather, as disqualified from a single job – Schneider OTR commercial truck driver. The term "substantially limits" is "interpreted strictly to create a demanding standard." *Kupstas*, 398 F.3d at 609 *quoting Toyota*, 534 U.S. at 197. In the context of "working," the plaintiff EEOC itself has interpreted "substantially limits" to mean "significantly restricted in the ability to perform either a *class of jobs* or a *broad range of jobs* in various classes as compared to the average person having comparable training, skills, and abilities." *Id.* at 612 (emphasis added) *citing* 29 C.F.R. § 1630.2(j)(3)(i).

A plaintiff must present "some evidence of the number and types of other jobs in the geographic region, from which he would be excluded because of his perceived impairments."

14

*Id.* at 613.  The impairment must "substantially limit employment generally," not merely preclude an employee from performing "either a particular specialized job or a narrow range of jobs."  *Id.* at 613 (internal citation omitted) *citing* 29 C.F.R. Pt. 1630, App. § 1630.2(j). The more particular the job requirements, the more necessary for a plaintiff to present demographic evidence showing those requirements are found in enough jobs to matter for ADA purposes. *See EEOC v. Rockwell*, 243 F.3d 1012, 1020 (7th Cir. 2001).[4]  "A plaintiff can *never* satisfy his burden by showing only that his employer believed that he could not perform a specific job."  *Id.* at 613 (emphasis added) *citing Toyota*, 534 U.S. at 200; *Peters*, 311 F.3d at 864.  "It is not enough to say that if the physical criteria of a single employer were *imputed* to all similar employers one would be regarded as substantially limited in the major life activity or working *only as a result of this imputation*."  *Id.* at 76-77 *quoting Sutton*, 527 U.S. 471 at 493 (emphasis in original); *see also Terry v. American Airlines, Inc.*, No. 02 C 8829, 2004 U.S. Dist. LEXIS 19712, *40 (N.D. Ill. Sept. 30, 2004) ("As in *Sutton*, the fact that American perceived Plaintiff as an alcoholic and, thus, unable to fly a commercial airplane does not demonstrate that American also perceived him as precluded from performing a wide range of jobs.").

The undisputed facts show that Schneider believed Hoefner has a diagnosis (neurocardiogenic syncope) that disqualifies him *only from OTR commercial truck driving for Schneider*.  Def. SOF ¶ 70-80.  There is no evidence that any employer other than

---

[4] There is no question that these standards apply equally in a "regarded as" disabled case. *See Moore*, 221 F.3d at 954; *see also Sinkler v. Midwest Property Mgmt. Ltd.*, 209 F.3d 678, 686-87 (7th Cir. 2000) (affirming summary judgment for employer which discharged plaintiff because her driving phobia rendered her unable to drive outside of Kenosha, because the employer did not regard the plaintiff as unable to commute generally).

Schneider has the same neurocardiogenic syncope standard, or that Schneider believed as much. To the contrary, the undisputed facts show that Hoefner was highly marketable and, to no one at Schneider's great surprise, easily found employment as a OTR driver with another carrier. Def. SOF ¶¶ 81-87. The undisputed facts show that Schneider knew that opinions differed with respect to syncope, and understood its policy was more stringent than many carriers, and that Hoefner would easily secure employment as a commercial driver with another company (such as the Dean Brennan company). Def. SOF ¶¶ 70-76, 80-87. Schneider disqualified Hoefner from a single job type, and not from a broad class of jobs.

Hoefner himself testified that his disqualification was limited to driving a commercial *for Schneider*:

> Q. When did you first speak to Veronica [Koske in Schneider's Occupational Health Department]?
>
> A. I believe it was November 6.
>
> Q. If what year?
>
> A. '02.
>
> Q. And what was the reason for the conversation with Veronica?
>
> A. I was waiting for the okay to go back to work, and she called early afternoon and said that I would no longer be[] driving an orange truck.
>
> Q. What color are Schneider's trucks?
>
> A. Orange.
>
> Q. Did you understand that to mean that you wouldn't be driving *for Schneider* anymore?
>
> A. Yes.

16

Def. SOF ¶ 60 (emphasis added).[5]

In light of these undisputed facts, summary judgment for Schneider is warranted.  *See Kupstas*, 398 F.3d at 6713 (a case "could not go to the jury without at least some evidence" that the impairment allegedly perceived would substantially limit the plaintiff's ability to meet the requirements of other jobs).

In a case involving similar facts, summary judgment was granted and affirmed.  In *EEOC v. J.B. Hunt*, 321 F.3d 69, 76-77 (2d Cir. 2003), the court held that a policy disqualifying applicants who used certain medications from OTR driving positions did not violate the ADA.  The Court found that "[d]riving freight-carrying tractor-trailer trucks over long distances for extended periods of time is neither a 'class of jobs' nor a 'broad range of jobs,' as the EEOC alleges, but rather a specific job with specific requirements" *Id.* at 75.  Moreover, "the fact that Hunt did not have another less demanding driving position to offer the candidates [did] not indicate that Hunt perceived the candidates as being unqualified for any driving position at all." *Id.  J.B. Hunt* is strong support for Schneider's position in this case.  Schneider is entitled to summary judgment because there is no evidence whatsoever that it regarded Hoefner as disabled within the meaning of the ADA.

---

[5] It also is undisputed that Schneider invited Hoefner to apply for other jobs, and that he expressed no interest in doing so.  This undisputed fact also refutes the idea that Schneider regarded Hoefner as substantially limited in *working*.   Def. SOF ¶¶ 65, 67.

17

**III.    SCHNEIDER IS ENTITLED TO SUMMARY JUDGMENT FOR THE ADDITIONAL REASON THAT THE UNDISPUTED FACTS THAT SHOW THAT ITS SYNCOPE POLICY RENDERED HOEFNER UNQUALIFIED FOR THE POSITION OF A SCHNEIDER OTR COMMERCIAL TRUCK DRIVER.**

The plaintiff EEOC bears the additional burden of showing that Hoefner was "qualified" for purposes of the ADA. *See Green v. Pace Suburban Bus*, No. 02 C 3031, 2004 U.S. Dist. LEXIS 12956, *34 (N.D. Ill. July 12, 2004). The determination whether the Hoefner is a qualified individual must be made as of the time of the adverse employment decision, here, Hoefner's disqualification from OTR driving for Schneider. *See id.* at *35.

The Seventh Circuit employs a two-step analysis to determine if an individual is qualified for a particular job. *Basith v. Cook County*, 241 F.3d 919, 927 (7th Cir. 1996); *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 56 (7th Cir. 1996) (*citing* 29 C.F.R. app. § 1630.2(m) (the determination of whether an individual with a disability is "qualified" should be made in two steps: first whether the individual satisfies the prerequisites for the position; and second whether the individual can perform the essential functions with or without reasonable accommodation). A court should first consider "whether the individual satisfies the prerequisites of the job, in terms of skills or experience." *See Peters v. City of Mauston*, 311 F.3d 835, 845 (7th Cir. 2002) (summary judgment granted for defendant where it did not regard plaintiff with lifting restrictions as disabled, and plaintiff could not perform the essential functions of the job). Qualifications, of course, are defined by the employer, not the plaintiff. *See, e.g., Leisen v. City of Shelbiville*, 153 F.3d 805, 808. A plaintiff's failure to satisfy step one of this two-part analysis requires a grant of summary judgment in favor of the defendant. *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 (7th Cir. 1996).

18

It is undisputed that Schneider requires each of its commercial drivers to meet its Occupational Health standards. Def. SOF ¶ 10-11. It also is undisputed that Schneider has a policy that disqualifies individuals diagnosed with neurocardiogenic syncope from holding OTR commercial truck driving positions for Schneider. Def. SOF. ¶ 34. As the Supreme Court stated in *Sutton*,

> [A]n employer is free to decide that physical characteristics or medical conditions that do not rise to the level of an impairment – such as one's height, build, or singing voice – are preferable to others, just as it is free to decide that some limiting, but not substantially limiting, impairments make individuals less than ideally suited for a job.

*Sutton*, 527 U.S. at 490.

There can be no disputing that Hoefner did not meet Schneider's OTR commercial driver qualification standards, and thus that he was not qualified to be a commercial driver for Schneider. There is no evidence to suggest that Schneider's reliance on its syncope policy to disqualify Hoefner from OTR commercial truck driving for Schneider was a pretext for any other motive. Schneider thus is entitled to summary judgment for the additional reason that plaintiff EEOC cannot show that Hoefner was a qualified individual with a disability, or that Schneider's reason for removing him from the job of Schneider OTR commercial truck driver was a pretext for discrimination. *See Nese*, 405 F.3d at 641.

## CONCLUSION

Schneider's corporate culture is permeated with this message: "Safety first and always. We have an obligation to our associates and the public to operate safely. Nothing we do is worth hurting ourselves or others." Def. SOF ¶ 9. DOT regulations allow Schneider to regulate above DOT minimum safety standards, and thus legitimize and indeed applaud Schneider's Safety First corporate culture. *See* 49 C.F.R. § 390.3(d)

19

The plaintiff EEOC is seeking to undermine Schneider's Safety First culture by second guessing its risk assessment when it comes to a neurocardiogenic syncope diagnosis.[6] Nothing in the ADA permits the EEOC to do this.

---

[6] Every trucking company must assess risk when it has knowledge of a medical diagnosis of one of its drivers. In *Browning v. Shaffer Trucking Co.*, No. 2-080/01-0854, 2003 Iowa App. LEXIS 373, *11-12 (Ct. App. Iowa, Apr. 30, 2003), for example, the appellate court affirmed a jury's verdict against a trucking company for negligently employing a driver who became unconscious due to heart arrhythmia, causing him to lose control of his truck killing himself and his wife, and injuring the plaintiff. *Id.* at *2-3, 11-12. The court found that the jury was permitted to find the employer vicariously liable for the driver's knowledge of his own medical condition, which made the accident reasonably foreseeable, despite the driver's having recently passed two DOT physical examinations by doctors. *Id.* at *7. Even an EEOC expert in this case recognized that it is the legitimate province of the employer to assess the risk associated with the employer's knowledge of a driver's medical condition. Def. SOF ¶ 79 ("I don't have any expertise in their business judgments.").

Schneider limited its disqualification of Hoefner to his OTR commercial truck driving job *at Schneide*r, based on its safety policies; thus as a matter of law Schneider did not regard Hoefner as disabled under the ADA.  The Court should grant summary judgment on liability to defendant Schneider, and against the plaintiff EEOC.

**DATED: January 20, 2006**                     Respectfully submitted,

                                                                        Seyfarth Shaw LLP


                                                                        By_____/s Alison  B. Willard_____
                                                                                    One of Its Attorneys

Mark Casciari
James L. Curtis
Alison B. Willard
Seyfarth Shaw LLP
55 East Monroe Street
Suite 4200
Chicago, Illinois 60603
(312) 346-8000

21

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

## CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2006, I electronically filed the foregoing ***Memorandum Of Law In Support Of Schneider's Motion For Summary Judgment on Liability*** with the Clerk of the Court using the ECF system.

s/_____Alison B. Willard_____
Attorney for Schneider National Carriers, Inc.
Seyfarth Shaw, LLP
55 East Monroe Street, Suite 4200
Chicago, Illinois 60603
Ph:  (312) 346-8000
Fax:  (312) 269-8869
abwillard@seyfarth.com